PAUL J. ANDRE (State Bar No. 196585)
(pandre@kslaw.com)
LISA KOBIALKA (State Bar No. 191404)
(lkobialka@kslaw.com)
SEAN M. BOYLE (State Bar. No. 238128)
(sboyle@kslaw.com)
KING & SPALDING LLP
333 Twin Dolphin Drive
Suite 400
Redwood Shores, CA 94065
Telephone:  (650) 590-0700
Facsimile:  (650) 590-1900

Attorneys for Plaintiff
LEADER TECHNOLOGIES, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| LEADER TECHNOLOGIES, INC., a Delaware corporation,<br><br>　　　　　Plaintiff-Counterdefendant,<br><br>　　v.<br><br>FACEBOOK, INC., a Delaware corporation,<br><br>　　　　　Defendant-Counterclaimant. | No. C10-80028MISC JW (HRL)<br><br>Action Currently Pending in the U.S. District Court, Dist. of Delaware<br>(C.A. No. 1:08-cv-00862-JJF-LPS)<br><br>**LEADER TECHNOLOGIES, INC.'S OPPOSITION TO MOTION TO QUASH DEPOSITION SUBPOENAS OF NONPARTIES KAREL BALOUN, STEPHEN DAWSON-HAGGERTY AND THYAGARAJA S. RAMAKRISHNAN AND FOR PROTECTIVE ORDER AND REQUEST FOR A CONTEMPT ORDER**<br><br>**DATE:**　　March 2, 2010<br>**TIME:**　　10:00 am<br>**JUDGE:**　Judge Howard R. Lloyd |

# **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND..................................................................................................................1

    1.      The Underlying Action .................................................................................1

    2.      The Issued Subpoenas in Question ..............................................................2

    3.      The Meet and Confer ...................................................................................3

III. ARGUMENT......................................................................................................................3

    1.      Nonparties Baloun, Dawson-Haggerty, and Ramakrishnan Have
Not Timely Filed this Motion to Quash and Should be Held in
Contempt of this Court..................................................................................3

    2.      The Deposition Testimony from the Nonparties is Likely To Lead
to the Discovery of Admissible Evidence....................................................5

              a.) Mr. Baloun...............................................................................5

              b.) Mr.Ramakrishnan ....................................................................7

              c.) Mr. Dawson-Haggerty ............................................................8

    3.      The Subpoenas Are Not Duplicative or Unduly Burdensome.....................9

              a.) Merely Stating that Testimony is Duplicative Does not
Meet the Burden........................................................................10

              b.) There is No Showing of Undue Burden ..................................10

    4.      Nonparties Have Failed to Meet Their Burden for a Showing of
Good Cause.................................................................................................11

    5.      The Motion to Quash and For a Protective Order is Frivolous..................12

IV. CONCLUSION..................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

Ace Hardware Corp. v Celebration Ace Hardware, LLC,
     Civ. No. 09 cv 66, 2009 WL 3242561 (D. Del. Oct. 8, 2009)..................................................4

Anderson v. Abercrombie & Fitch Stores, Inc.,
     No. 06cv991-WQH (BLM), 2007 WL 1994059 (S.D. Cal. July 2, 2007)..............................4

Application of Johnson & Johnson,
     59 F.R.D. 174 (D. Del. 1973) .................................................................................................4

Beckman Indus., Inc. v. Int'l Ins. Co.,
     966 F.2d 470 (9th Cir. 1992) ................................................................................................12

Blankenship v. Hearst Corp.,
     519 F.2d 418 (9th Cir. 1975) ................................................................................................12

DR Sys., Inc. v. Eastman Kodak Co.,
     No. 08cv669-H (BLM), 2009 WL 2973008 (S.D. Cal. Sept. 14, 2009)........................ 10, 11

Exxon Shipping Co. v. U.S. Dep't of Interior,
     34 F.3d 774 (9th Cir. 1994) ..................................................................................................10

F.D.I.C. v. Garner,
     126 F.3d 1138 (9th Cir. 1997) ..............................................................................................10

First Nat. Mortgage Co. v. Federal Realty Inv. Trust,
     No. C 03-02013 RMW (RS), 2007 WL 4170548 (N.D. Cal. Nov. 19, 2007) .............. 5, 8, 10

Innomed Labs, LLC v. Alza Corp.,
     211 F.R.D. 237 (S.D.N.Y. 2002) ............................................................................................4

Moon v. SCP Pool Corp.,
     232 F.R.D. 633 (C.D. Cal. 2005) ............................................................................................9

Nova Biomedical Corp. v. i-STAT Corp.,
     82 F.R.D. 419 (S.D.N.Y. 1998) ..............................................................................................4

Oppenheimer Fund, Inc. v. Sanders,
     437 U.S. 340 (1978).......................................................................................................... 5, 11

Pennwalt Corp. v. Durand-Wayland, Inc.,
     708 F.2d 492 (9th Cir. 1983) ........................................................................................... 3, 12

Phillips ex. rel. Estates of Byrd v. General Motors Corp.,
     307 F.3d 1206 (9th Cir. 2002) ........................................................................................ 11, 12

Seattle Times Co. v. Rhinehart,
    467 U.S. 20 (1984) .......................................................................................................... 11

**Other Authorities**

Federal Rules of Civil Procedure 26 ..................................................................................... 5, 11

Federal Rules of Civil Procedure 45 ..................................................................................... passim

ii

# I.  INTRODUCTION

Nonparties Karel Baloun, Thyagaraja S. Ramakrishnan, and Stephen D. Haggerty ("nonparties") failed to move the Court for an order quashing their respective subpoenas and for a protective order in a timely manner prior to their noticed deposition dates.  Indeed, all of the noticed deposition dates past before nonparties ever informed Leader of their intent to file a motion to quash.  The nonparties waited well over a month from the date of service before informing Leader Technologies, Inc. ("Leader") that they would file a motion to quash.  In fact, the noticed hearing date for this motion is April 12, 2010, over three months from the service of the subpoenas, and well after the close of discovery in this case.  Because nonparties failed to comply with the properly issued subpoenas or failed to bring a timely motion to quash, they are in contempt of this Court.

Notwithstanding the nonparties' failure to timely move the Court, the arguments put forward as justification for asking the Court to quash the subpoenas are based on claims of duplicity and undue hardship.  These formalistic arguments fail based on the scarcity of credibility and reasoning in which they are offered.  The nonparties in question have factual information that is relevant to questions of infringement, and willful infringement, as well as information about the functionalities of various technologies incorporated into the Facebook website.  In addition, the nonparties were present during critical times of Facebook's implementation, and thus would have relevant factual information relating to many issues in the underlying case.  As such, Leader respectfully asks the Court to deny nonparties motion to quash and for a protective order, to hold the nonparties in contempt for failure to comply with a properly issued subpoenas.  Leader also asks the Court to award fees and costs to Leader associated with opposing to this motion.

# II.  BACKGROUND

### 1.     The Underlying Action

On November 19, 2008, Leader filed a complaint against Facebook, Inc ("Facebook") for willful patent infringement.  <u>Leader Technologies, Inc. v. Facebook, Inc.,</u> Civil Action No. 08-

1

1  862-JJF-LPS (D. Del.).  The parties are in a shortened phase of discovery in which many

2  depositions have been noticed. The time frame in which to accomplish these depositions is very

3  limited, with all dispositions to be completed by March 1, 2010.  Thus any delay scheduling

4  these depositions severely prejudices the party seeking to take the deposition.

5      **2.**      **The Issued Subpoenas in Question**

6      Karel Baloun was personally served with a subpoena to testify at deposition and to

7  produce documents by A & A Legal Service on January 9, 2010.  Declaration of Sean M. Boyle

8  in Support of Leader Technologies, Inc.'s Opposition to Motion to Quash Deposition Subpoenas

9  of Nonparties Karel Baloun, Stephen Dawson-Haggerty and Thyagaraja S. Ramakrishnan and

10 for Protective Order and Request for a Contempt Order ("Boyle Decl."), Ex. 1 at 8.[1]  Thyagaraja

11 S. Ramakrishnan was personally served with a subpoena to testify at deposition and to produce

12 documents by A & A Legal Service on January 10, 2010.  Boyle Decl., Ex. 2 at 8.  Stephen D.

13 Haggerty was personally served with a subpoena to testify at deposition and to produce

14 documents by A & A Legal Service on January 21, 2010.  Boyle Decl., Ex. 3 at 8.  Each of the

15 nonparties was properly served with a valid subpoena.  None of the nonparties object to the

16 proper service and integrity of the issued subpoenas from this Court.

17     Each of the nonparties made the same objection to his respective subpoena, as follows:

18         [Deponent] objects to the time and to the location specified in the
        Notice of Deposition and Subpoena.  [Deponent] will appear for a
19         deposition, if at all, at a time and place to be agreed upon.

20 Boyle Decl., Exs. 4-6.  Nonparties Baloun and Ramakrishnan objected prior to the noticed

21 deposition time, whereas nonparty Dawson-Haggerty objected a day after his noticed deposition.

22 Boyle Decl., Ex. 4 at 9.  Thus any objections made by Mr. Dawson-Haggerty should be deemed

23 waived.  See Fed. R. Civ. Proc. 45.

24

25

26 ─────────────────────

27 [1] Tellingly, nonparties have neglected to include the proof of service in their exhibits supporting their motion.

28

2

Leader's Opposition to Motion to Quash                                                         No. C10-80028MISC JW (HRL)
and Request for a Contempt Order

### 3. The Meet and Confer

On January 27, 2010, one day *after* Mr. Ramakrishnan's deposition was to take place, and on the day of Mr. Baloun's deposition, counsel for nonparties and Leader met and conferred regarding these nonparty depositions. Motion to Quash at 3. On January 28, 2010, counsel for nonparties and Facebook wrote a letter, stating that "we would like to understand what relevant testimony Leader expects to receive from [these] third parties…." Boyle Decl., Ex. 7 at 1. Counsel for nonparties then demanded that Leader provide justification for the undisputedly proper subpoenas. Id. Counsel for nonparties did not indicate a motion to quash and for a protective order would be filed with this Court.

On February 1, 2010, some twenty-three (23) days after Mr. Baloun was served with his subpoena, and five (5) days after his noticed deposition, counsel for nonparties first informed Leader that it planned to move this Court for an order quashing the subpoenas. Boyle Decl., Ex. 8.

## III. ARGUMENT

### 1. Nonparties Baloun, Dawson-Haggerty, and Ramakrishnan Have Not Timely Filed this Motion to Quash and Should be Held in Contempt of this Court

Under Rule 45, any party may serve a subpoena requiring a nonparty to attend a deposition and to produce documents. See Fed. R. Civ. P. 45(a)(1)(B)-(C). While the nonparty may make objections to the subpoena pursuant to Rule 45(c)(2)(B), the order to attend must be obeyed unless a timely motion to quash or modify the subpoena is made. See Fed. R. Civ. P. 45(c)(2)(B) and 45(c)(3)(A). However a party cannot simply object to the subpoena and neglect to comply with it, rather, the party must move to quash or seek a protective order. See Pennwalt Corp. v. Durand-Wayland, Inc., 708 F.2d 492, 494 n.5 (9th Cir. 1983) ("[o]nce the person subpoenaed objects to the subpoena…the provisions of Rule 45(d) come into play").

Nonparties did not move to quash these subpoenas until February 4, 2010, nearly a month after the first subpoena was served on Messrs. Baloun and Ramakrishnan, and two weeks after Mr. Dawson-Haggerty was served. Boyle Decl., Exs. 1, 2, and 3 at 8. Rule 45(c)(3) requires a

3

Leader's Opposition to Motion to Quash                                    No. C10-80028MISC JW (HRL)
and Request for a Contempt Order

1 motion to quash be made in a "timely" manner. Fed. R. Civ. P. 45(c)(3)(A). Thus, the motion to
2 quash is not timely. "Timely" is considered to be any time *prior* to the deposition date noticed
3 on the subpoena. See Anderson v. Abercrombie & Fitch Stores, Inc., No. 06cv991-WQH
4 (BLM), 2007 WL 1994059, at *8 (S.D. Cal. July 2, 2007) (denying motion to quash due to lack
5 of timeliness) citing Innomed Labs, LLC v. Alza Corp., 211 F.R.D. 237, 240 (S.D.N.Y. 2002)
6 ("Although Rule 45(c)(3)(A)(iv) requires that the motion to quash be timely without defining
7 what 'timely' is, it is reasonable to assume that the motion to quash should be brought before the
8 noticed date of the scheduled deposition."); compare Ace Hardware Corp. v Celebration Ace
9 Hardware, LLC, Civ. No. 09 cv 66, 2009 WL 3242561, at *2 (D. Del. Oct. 8, 2009) citing Nova
10 Biomedical Corp. v. i-STAT Corp., 182 F.R.D. 419, 422 (S.D.N.Y. 1998) ("service anytime
11 before the subpoenas' return date should be considered timely") with Application of Johnson &
12 Johnson, 59 F.R.D. 174, 177 (D. Del. 1973) (denying motion to quash as moot because it was
13 filed after the appearance date).

14      While nonparties objected to their respective subpoenas, each implied that there was an
15 issue as to convenient deposition dates, and not that each refused to appear. It is inappropriate
16 for a subpoenaed party to simply object to a properly issued subpoena and noticed deposition
17 date, and then move for a motion to quash many days after that noticed date. Having a meet and
18 confer on the day following one of the noticed depositions, and on the day of another, is not
19 sufficient compliance.[2]

20      Indeed, such behavior is contempt of this Court. Counsel for nonparties first informed
21 Leader on February 1, 2010 that a motion to quash would be filed. Boyle Decl., Ex. 8. Prior to
22 this date, counsel for nonparties merely objected to the properly issued subpoenas, but failed to
23 inform Leader of any motion to quash. Boyle Decl., Ex. 7 at 1. Leader was preparing an
24 application requesting an order from this Court commanding nonparties to show cause why a
25 contempt citation should not issue due to failure of the nonparties to comply with the subpoenas.

26

27 [2] Having such a meet and confer seemed to imply that the witnesses would be produced, and only the date and time would be in question. In fact, nonparties simply ignored the subpoenas.
28

4

Leader's Opposition to Motion to Quash                      No. C10-80028MISC JW (HRL)
and Request for a Contempt Order

As such, Leader respectfully asks the Court to deny nonparties' motion to quash and for a protective order on the grounds that the motion was not timely filed. In addition, Leader respectfully asks the Court to consider this motion an application for an order to show cause why a contempt order should not issue. Based upon this motion and nonparties moving papers, Leader contends that nonparties can not show good cause for their actions, and are in contempt of this Court.

### 2. The Deposition Testimony from the Nonparties is Likely To Lead to the Discovery of Admissible Evidence

Discoverability under Rule 26 is very broad, especially if the information sought is "relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Indeed, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. This standard is broad in scope. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)(the scope may "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case")(citation omitted). Nonparties believe that "there is simply no basis to believe that [nonparties] would yield anything different or of any significance." Moving Papers at 3. However the nonparties provide only conclusory statements that their testimony *may* be similar to other discovery, which is not a justification for failure to comply with the subpoenas. See First Nat. Mortgage Co. v. Federal Realty Inv. Trust, No. C 03-02013 RMW (RS), 2007 WL 4170548, at *2 (N.D. Cal. Nov. 19, 2007)("Indeed, it is not uncommon for different witnesses to an event to have differing recollections of what occurred").

It is clear that deposition testimony from Messrs. Baloun, Ramakrishnan, and Dawson-Haggerty, will reasonably lead to the discovery of admissible evidence. Indeed, their testimony may even be more credible than that of current employees.

#### a) Mr. Baloun

As nonparties admit, Mr. Baloun was an engineer at Facebook from May 2005 until May 2006. Moving Papers at 2. But nonparties fail to mention that Mr. Baloun wrote a book on the

5

subject of Facebook, entitled "Inside Facebook". As Mr. Baloun states in his book, he was "one of the first ten engineers" to work at Facebook. Ex. 11 at 11.

> Karel Baloun                                                            11
> _____
>
> ### A Year in the Life of a Yopo[8]
>
> On April 21, 2005, I got a seemingly ignorable email via LinkedIn.com:
>
> > Hi Karel,
> > I'm VP and GM at Thefacebook, the top site for college students in the US. [...] Given your experience at LookSmart, I thought you might be a good fit. Thefacebook is still a very small team despite having a strong market position, so this is a great opportunity for the right person. If you're interested in talking with us please let me know the best way to get in touch with you.
> > Thanks,
> > Matt
>
> Thus started a yearlong dreamlike odyssey, from which I have just awoken.
>
> A few quick weeks later I was one of the first ten engineers, papers signed on May 5, 2005. I may have been engineer number seven or nine, depending on how many informal contributions we acknowledge. Nevertheless, preceding me clearly are only Zuck himself, Dustin the Man, D'Angelo the Brain, Victor, James, Aaron, and McCollum. To bring experience to a code base of which every line had been written by someone younger than twenty, two other senior engineers, Steve Chen and Scott, were hired with me. Scott has a Master's
> _____
> [8] Young professional. This term was invented by Noah Kagan.

As such, it is somewhat disingenuous of nonparties to infer that Mr. Baloun has only redundant information. Moving Papers at 3. In fact, Mr. Baloun has unique factual knowledge of Facebook relevant to the issues in the underlying case based upon the information in his book. However, at this point, the considerable amount of relevant information that is disclosed in Mr. Baloun's book is hearsay until we ask Mr. Baloun to confirm it under oath. Without this testimony, which is extremely relevant to Leader's case against Facebook, this information can not be used at trial or in Leader's motion practice.

Nonparties argue that other witnesses may have a "deeper knowledge of past operation of the company and the website." Moving Papers at 3. Such a statement has no support. In fact, in advertising his book about his time at Facebook, Mr. Baloun states, "[a]s an early engineer, I reveal the inside of Facebook's explosive growth as it became the premiere online environment for US college students. Including, how and by whom products were made…." See Ex. 9. Mr. Baloun would have relevant information regarding components, modules, and functionality incorporated into the Facebook website. Mr. Baloun would also know others who were involved in creating these parts of the Facebook website. Mr. Baloun would know about re-launches or updates of these features. Mr. Baloun would understand how the Facebook website collects and stores user information. Mr. Baloun would have information on how the Facebook website operates in conjunction with third party applications, which is critical to not only understanding infringement, but also in the proving of Leader's damages theory.

Based on this fraction of factual information noted above, and a plethora of other information found within his book, Mr. Baloun's testimony would impact every facet of Leader's case, including proving infringement, willful infringement, and damages.

### b)     Mr. Ramakrishnan

Mr. Ramakrishnan was an engineer for Facebook from October 2005 until October 2006. Moving Papers at 2. In fact, Mr. Ramakrishnan was Vice President for engineering, where he oversaw the build out of the site's architecture and managed a technology rollout that expanded Facebook beyond its college-age community. See Ex. 10. As stated in a previous litigation by Mr. Zuckerberg, the CEO of Facebook, Mr. Ramakrishnan was one of two Vice Presidents of engineering, all of the engineers reported to him, he mentored all the engineers, and was a very hands-on engineer himself. It is believed that Mr. Ramakrishnan was present when the "Groups" application was created, as well as when the "Photos" applications was created – both hotly contested infringement contentions in the underlying case. Leader seeks information regarding both the "Groups" and "Photos" as these applications directly infringe the Leader patent. How these applications collect and store user information is also information Mr. Ramakrishnan

7

Leader's Opposition to Motion to Quash                                        No. C10-80028MISC JW (HRL)
and Request for a Contempt Order

would be aware of not only as Vice President of engineering, but as the person who oversaw the creation of these applications.  Second hand accounts by the other witnesses nonparties refer to are inferior to the testimony of the person who was intimately involved in the creation of these critical infringing functionalities.

Mr. Ramakrishnan is very knowledgeable of the past operation of the company and the website at the time of his employment, as nonparties point out.  Moving Papers at 3.  As such, Mr. Ramakrishnan will likely have pertinent information about how these applications were created (or copied as Leader alleges,) and this testimony is directly relevant to Leader's willful infringement case.  Mr. Ramakrishnan may well have differing recollections of facts relating to what information was used to create various applications that nonparties claim other witnesses can provide.  See First Nat. Mortgage, 2007 WL 4170548, at *2.  It is precisely this independent factual testimony Leader seeks to prove its case.  Leader should not be hamstrung in its discovery efforts because nonparties believe other witnesses can provide similar, and perhaps more favorable testimony.  Leader would like to ascertain for itself what testimony best serves Leader's case.

### c)  Mr. Dawson-Haggerty

Mr. Dawson-Haggerty was an engineer for Facebook for Facebook during the summer of 2004.  During this critical time in Facebook's history, Mr. Dawson Haggerty is believed to have been the creator of "Groups," which is key part of Leader's infringement case.  Indeed, Dustin Moskovitz, a co-founder of Facebook, indicated in a deposition taken on the day of the filing of this motion that Mr. Dawson-Haggerty was the primary engineer responsible for the creation of "Groups."[3]

"Groups" is a functionality of the Facebook website which Leader contends infringes its patent.  Because Mr. Dawson-Haggerty worked at Facebook early in Facebook's history, he will

---

[3] Because this opposition motion and motion to shorten time must be filed today, the transcript is not yet available.  Leader will supplement this motion to include the relevant transcript to support this factual contention.

8

Leader's Opposition to Motion to Quash                          No. C10-80028MISC JW (HRL)
and Request for a Contempt Order

1 have extremely relevant factual information regarding how modules or applications were created
2 and implemented, as well as what sources were used to facilitate the implementation of those
3 modules and application.  Indeed, Mr. Dawson-Haggerty, as the creator of the "Groups"
4 application, will be in the very best position to give testimony about it.  This testimony will
5 impact the infringement case.  As such, Mr. Dawson-Haggerty has unique and personal
6 knowledge of Facebook's infringing technology.

7 By denying Leader's right to take Mr. Dawson-Haggerty's deposition, Facebook is
8 effectively blocking Leader's right to seek discovery into facts relevant to Leader's claim of
9 infringement.  While nonparties claim other witnesses could comment on "Groups," the very
10 best evidence would come from the person who created this functionality.  It would be critical to
11 understand how this application was created, what changes or upgrades were implemented over
12 the years, and for what reason was the application created.  Leader should be given the
13 opportunity to obtain testimony from the engineer given credit for this application, and not be
14 asked to rely on second-hand information from other witnesses nonparties select.

### 3. The Subpoenas Are Not Duplicative or Unduly Burdensome

16 The sole grounds that nonparties rely upon for their motion to quash is that the
17 depositions would be unduly burdensome and duplicative.  Moving Papers at 1-2.  Upon a timely
18 motion, courts may quash or modify a subpoena for any one of the reasons set forth in Rule
19 45(c)(3)(A).  Fed. R. Civ. P. 45(c)(3)(A) (stating that a court must quash or modify if the
20 subpoena fails to allow reasonable time to comply, requires travel greater than 100 miles by the
21 deponent, requires the disclosure of privileged or protected information, or subjects the deponent
22 to undue burden).  A deponent may not simply object to the subpoena to avoid compliance, but
23 must timely move for a motion to quash or seek a protective order.  Moon v. SCP Pool Corp.,
24 232 F.R.D. 633, 636 (C.D. Cal. 2005).  The deponent bears the burden of persuasion under Rule
25 45(c)(3) in this case.[4]  See id. at 637.  Nonparties have not alleged that the subpoenas fail to

---

27 [4] Nonetheless, counsel for nonparties attempts to shift the burden to Leader.  See Ex. 7 at 1
("Please let us know by Monday, February 1 on what basis [Leader] believes it can obtain

9

Leader's Opposition to Motion to Quash                          No. C10-80028MISC JW (HRL)
and Request for a Contempt Order

allow reasonable time for compliance, require travel greater than 100 miles, or require the disclosure of privileged or protected information.

### a) Merely Stating that Testimony is Duplicative Does Not Meet the Burden

Nonparties' grounds that the subpoena would result in duplicative discovery is easily dismissed. Rule 45(c)(3) is clear as to what constitutes required or permitted modifications to a properly issued subpoena, and the possibility of duplicative discovery is not delineated. See generally Fed. R. Civ. P. 45(c)(3). "Indeed, it is not uncommon for different witnesses to an event to have differing recollections of what occurred." First Nat. Mortgage, 2007 WL 4170548, at *2. Thus, just because one person may testify about particular facts, does not make additional testimony about such facts repetitive. See DR Sys., Inc. v. Eastman Kodak Co., No. 08cv669-H (BLM), 2009 WL 2973008, at *3 (S.D. Cal. Sept. 14, 2009)(denying a protective order for failing to establish good cause for an order precluding the deposition because witnesses may have differing recollections of events). Simply stating conclusions that as yet unknown testimony from nonparties "would" be duplicative is not a grounds for quashing a subpoena or seeking a protective order.

### b) There is No Showing of Undue Burden

Courts have broad discretion in determining whether or not a subpoena is unduly burdensome. See Exxon Shipping Co. v. U.S. Dep't of Interior, 34 F.3d 774, 779-80 (9th Cir. 1994). Such undue burden was meant to focuses on the travel expenses and prevention of enforcement of irrelevant subpoenas issued for vexatious reasons. See Fed. R. Civ. P. 45 advisory committee's note subdivision (c) (amend. 1991). The moving party bears the burden of establishing that a subpoena is unduly burdensome. See F.D.I.C. v. Garner, 126 F.3d 1138, 1145-46 (9th Cir. 1997).

The nonparties have not alleged, nor met the burden of proving, that they would be subjected to excessive travel expenses (as Leader will be paying for those expenses.) Nor have

---

testimony from these third parties that it cannot obtain from other sources.").

10

1 the subpoenas been issued for any unethical or vexatious reasons.  All that nonparties allege is
2 that the subpoenas were somehow unduly burdensome because nonparties could not "assess
3 relevance."  Moving Papers at 1 (requesting protective order due to undue burden) and 3.  Given
4 the broad scope of discovery, failing to comply with a subpoena based on a relevance argument
5 is tenuous at best.  See Oppenheimer, 437 U.S. at 351 (allowing discovery on "any matter that
6 bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may
7 be in the case"); see also Fed. R. Civ. P. 26(b)(1) ("Relevant information need not be admissible
8 at the trial of the discovery appears reasonably calculated to lead to the discovery of admissible
9 evidence.")  Leader is not required prove the "need" or admissibility of any testimony it may
10 obtain from the nonparties.  Moving Papers at 6 (requesting that Leader "show any true need for
11 the testimony….").  All Leader need to do is "take reasonable steps to avoid imposing undue
12 burden or expense on a person subject to that subpoena" and to seek information that appears
13 "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. rules
14 26(b)(1), 45(c)(1).  Leader has complied with the Rules.

15     Because nonparties have failed to meet their burdens under Rule 45(c)(3) for proving
16 undue burden or that the deposition testimony and documents would not likely lead to the
17 discovery of admissible evidence, Leader respectfully asks the Court to deny nonparties' motion
18 to quash and for a protective order.

19     **4.**    **Nonparties Have Failed to Meet Their Burden for a Showing of Good Cause**

20     "Upon a showing of good cause, the Court 'may issue an order to protect a party or
21 person from annoyance, embarrassment, oppression, or undue burden or expense.'"  DR Sys.,
22 2009 WL 2873008, at *1 quoting Fed. R. Civ. P. 26(c).  The Court has wide discretion to
23 determine what constitutes a showing of good cause.  Seattle Times Co. v. Rhinehart, 467 U.S.
24 20, 36 (1984).  The party seeking the Court's intervention must meet the burden of proof.  See
25 Phillips ex. rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002)
26 ("For good cause to exist, the party seeking protection bears the burden of showing specific
27 prejudice or harm will result if no protective order is granted")(citations omitted).
28

---

11

Leader's Opposition to Motion to Quash                                                      No. C10-80028MISC JW (HRL)
and Request for a Contempt Order

Nonparties have failed to show specific prejudice or harm should the depositions occur. The only alleged prejudice or harm to nonparties is that the deposition testimony may be duplicative or inconvenient. Moving Papers at 7. Such claims are entirely speculative. See Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992) (holding that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test")(quotation omitted). Indeed, parties opposing discovery are required to "carry a heavy burden of showing why discovery [should be] denied." Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975). Nonparties have not made the strong showing required to deny Leader its right to seek discovery from the nonparties. See id. ("[A] strong showing is required before a party will be denied entirely the right to take a deposition.").

Given the high bar required to quash a subpoena, Leader submits that nonparties have merely pled duplicity of testimony and inconvenience of the parties as the sole grounds for asking the Court for a protective order, offering no proof or examples of either. Such allegations of harm which lack specific examples are insufficient. Phillips, 307 F.3d at 1210-11. Leader respectfully asks the Court to deny the motion to quash and for a protective order.

**5.     The Motion to Quash and For a Protective Order is Frivolous**

Based on the above facts, it can be appreciated that nonparties failed to comply with the properly issued subpoenas. And instead of filing a motion to quash in a timely manner, nonparties chose to show contempt for this Court by ignoring the subpoenas under the guise of meeting and conferring as to the scope and nature of the depositions. Boyle Decl., Ex. 7 at 1. From the time of the noticed deposition dates, until February 1, 2010, nonparties never indicated they would move to quash and for a protective order. Boyle Decl., Ex. 8. It is clear that nonparties were not negotiating in good faith in order to comply with the subpoenas, and avoid the intervention of this Court. The law is clear regarding moving to quash or modify a properly issued subpoena. See Pennwalt, 708 F.2d at 494 n.5. Nonparties failed to comply with the law, causing what appears to be calculated delay and obstruction of Leader's ability to obtain deposition testimony and documents from the nonparties. This behavior is even more egregious

due to the very short period in which the parties have to take depositions.

Nonparties filed the motion to quash on February 4, 2010. This late filing date virtually ensured that a hearing could not be held until after the close of fact discovery in the underlying case. Nonparties also have noticed the motion for April 12, 2010, thus necessitating a motion to shorten time (filed concurrently with this motion.) Requesting the hearing a full month ***after*** the close of fact discovery is not only prejudicial to Leader (should they wish to follow up on information discovered from the nonparties,) but also belies the dilatory tactic attempted by nonparties.

Based on the facts and circumstances, the instant motion to quash or for a protective order was not brought in good faith, and is in fact a dilatory tactic. Leader respectfully asks the Court to award fees and costs associated with opposing this motion. With the Court's permission, Leader will file a motion which conforms to Local Rule 7-8.

### IV.  CONCLUSION

For the reasons facts and arguments presented above, Leader respectfully requests the Court to deny the motion to quash and for a protective order, to find nonparties in contempt of Court, and to award costs and fees incurred by Leader in opposing to this motion.

DATED:  February 12, 2010

KING & SPALDING LLP

By: /s/ Paul J. Andre                    .

Paul J. Andre
Lisa Kobialka
Sean M. Boyle
KING & SPALDING LLP
333 Twin Dolphin Drive, Suite 400
Redwood Shores, CA  94065

Attorneys for Plaintiff
LEADER TECHNOLOGIES, INC.